IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL R. GAGGIA,

                Plaintiff,                        No. 06:14-cv-00190-HZ

      v.

CAROLYN COLVIN, Acting                  OPINION & ORDER
Commissioner of Social Security,

                Defendant.


Tim Wilborn
WILBORN LAW OFFICE, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137

        Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
Ronald K. Silver
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902


1 - OPINION & ORDER

Catherine Escobar
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Michael Gaggia brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on February 12, 2010, alleging an onset date of October 29, 2007. Tr. 153-54, 167.[1] His application was denied initially and on reconsideration. Tr. 64-75, 76-87. On April 13, 2012, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 35-63. On April 24, 2012, the ALJ found Plaintiff not disabled. Tr. 17-34. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on prior back surgeries and degenerative disc disease. Tr. 185. At the time of the hearing, he was sixty-two old. Tr. 38. He is a high school graduate and completed a total of two years of college courses. Tr. 39, 186. He has past work experience as a "person agent" for a social services "brokerage," a program manager in social services, a

---

[1] Plaintiff's application recites an alleged onset date of December 19, 2007. Tr. 153. The February 16, 2010 Field Office Disability Report uses the October 29, 2007 date. Tr. 167.

2 - OPINION & ORDER

server at a resort, and a bank teller. Tr. 187. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed

3 - OPINION & ORDER

disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  Tr. 22.  Next, at steps two and three, the ALJ determined that Plaintiff has the severe impairment of back pain status post two prior back surgeries and fusion of L4-5, but that the impairment did not meet or equal, either singly or in combination with other impairments, a listed impairment.  Tr. 24.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except he can only occasionally stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, rope. or scaffolds.  Tr. 24.  He should also avoid concentrated exposure to heights, hazards, and heavy equipment.  Id.  With this RFC, the ALJ determined that Plaintiff is able to perform his past relevant work as a personal broker agent for social services.  Tr. 27.  Alternatively, the ALJ proceeded to step five, where he determined that Plaintiff acquired work skills from past relevant work which are transferable to

4 - OPINION & ORDER

other occupations with jobs existing in significant numbers in the national economy. Tr. 28. As a result, the ALJ determined that Plaintiff is not disabled. Tr. 29.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff argues that the ALJ erred at step four in concluding that he could perform his past relevant work as a personal agent broker in social services and at step five in concluding that Plaintiff could perform other work in the national economy. The Commissioner concedes that the ALJ erred at step four. Def.'s Brief at 5-6. The Commissioner contends that the error was harmless because the ALJ made the alternative step-five finding. Based on the Commissioner's concession, I do not discuss the ALJ's step-four findings and I consider only the arguments

5 - OPINION & ORDER

related to step five.

I.  The ALJ's Step-Five Determination

In concluding that Plaintiff could perform other jobs existing in significant numbers in the national economy, the ALJ initially noted Plaintiff's "advanced age" and "closely approaching retirement age" categories, his education level, and his ability to communicate in English.  Tr. 28. Next, he found that Plaintiff had acquired work skills from past relevant work (PRW).  Id. Relying on the testimony of the vocational expert (VE), the ALJ found that Plaintiff's PRW as a bank teller was semiskilled with a specific vocational preparation (SVP) of 5 and required skills in basic cashiering, customer service, and information imparting.  Id.

Then, relying on the VE's testimony, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff had acquired work skills from PRW that are transferable to other occupations with jobs existing in significant numbers in the national economy.  Id. at 28-29.  He further found that the jobs listed by the VE are so similar to Plaintiff's previous work that Plaintiff would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.  Tr. 29.

As noted, the ALJ relied on the VE testimony.  Of relevance here, when the ALJ asked the VE about whether Plaintiff would have transferable skills from his prior jobs, the VE responded yes, but indicated that they would be in the financial cashiering arena.  Tr. 59.  The skills she noted, such as "basic cashiering skills, customer service skills, [and] information imparting skills," were "mostly from the bank teller position."  Id.  She confirmed that the skills would be highly marketable and then identified several particular sedentary occupations that would fit these skills including check cashier, food checker, and auction clerk.  Id.  She testified

that there would be 1,100 such jobs in the regional economy and 77,000 of them nationally.  Tr.

60.  The VE also identified the position of information clerk, and testified that there were 1,200

such jobs in the regional economy and 84,000 of them nationally.  Id.

II.  Plaintiff's Step-Five Arguments

Plaintiff contends that the ALJ erred in his step-five finding because (1) his bank teller

position was not PRW, undermining the ALJ's reliance on that position as a basis for transferable

skills; (2) the ALJ made no findings supporting that Plaintiff can transfer to the identified

semiskilled jobs with very little vocational adjustment; and (3) even assuming Plaintiff can

transfer acquired skills to the identified jobs, he is still disabled because of his age and limitation

to no more than sedentary work.  I address Plaintiff's arguments in turn.

A.  Bank Teller Position as PRW

Under the Medical-Vocational Guidelines (the "grids"), a claimant of advanced age who

is a high school graduate but without the ability for direct entry into skilled work, is disabled if

the claimant has no skilled or semiskilled transferable skills from previous work experience.  20

C.F.R. Pt. 404, Subpt. P, App. 2, § 201.06. The claimant is not disabled if the claimant has such

transferable skills.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.07; see also Soc. Sec. Reg. (SSR)

82-41, available at 1982 WL 31389, at *1 ("Transferability of skills is an issue only when an

individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of

Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant

work (PRW), and that work has been determined to be skilled or semiskilled.").  Although the

grids were used as a framework in this case because of Plaintiff's inability to perform all

sedentary work, the ALJ appropriately considered Plaintiff's transferability of skills at step five.

The ALJ expressly determined that Plaintiff's work skills from his bank teller position were "work skills from past relevant work." Tr. 28 (citing 20 C.F.R. § 404.1568). Because the bank teller position is the undisputed basis for the ALJ's "transferability of skills" determination, that position must qualify as PRW. The regulations define "past relevant work" as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1); see also 20 C.F.R. § 404.1565(a) ("work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity"). "Substantial gainful activity" (SGA) is "work activity that is both substantial and gainful[.]" 20 C.F.R. § 404.1572. "Substantial" work activity is "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). It may be substantial even if done part-time. Id. "Gainful" work activity is "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). Work activity is considered "gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." Id.

Plaintiff was employed at his bank teller position from February to December 2011 and earned a total of $6,748.70. Tr. 160, 195. In determining whether previous work as an employee is SGA, the Commissioner uses various factors that are relevant to the particular work activity. 20 C.F.R. § 404.1574(a). One of the factors is earnings. 20 C.F.R. § 404.1574(a)(1). The regulation expressly states that the Commissioner "will use" earnings to determine if a claimant has engaged in SGA unless the Commissioner has information that shows that not all of the earnings should be counted. Id. The regulation also instructs that "[g]enerally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity." Id.

However, the regulation continues, "the fact that your earnings were not substantial will not necessarily show that you are not able to do substantial gainful activity." Id.

Earnings that "ordinarily" show that the claimant has engaged in SGA are determined, for calendar year 2001, under a formula provided in 20 C.F.R. § 404.1574(b)(2)(ii). Plaintiff represents, and Defendant does not contest, that the amount in 2001 is $740 per month. Plf.'s Op. Brief at 14 (citing to the "Monthly Substantial Gainful Activity Amounts Chart," available at http://www.socialsecurity.gov/oact/cola/sga.html.). Plaintiff states that regardless of whether his bank teller income is divided by ten or eleven months, his earnings are less than $740 per month. Id. (calculating $674.87 per month for ten months and $613.52 per month for eleven months).

Plaintiff argues that with earnings less than the $740 per month provided for in the regulation, his bank teller position did not constitute SGA. As a result, it cannot be PRW and thus cannot serve as the basis for transferable skills. As the regulations make clear, earnings alone are not determinative. However, the Ninth Circuit has made equally clear that earnings create a presumption even though they are not conclusive. Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2000) ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity"). Monthly earnings averaging less than the amount provided for in the regulation "show that a claimant has not engaged in substantial gainful activity." Id.; see also 20 C.F.R. § 404.1574(b)(3) ("[i]f your average monthly earnings are equal to or less than the amount(s) determined under paragraph (b)(2) . . . we will generally consider that the earnings from your work as an employee . . . will show that you have not engaged in substantial gainful activity"). Earnings below this amount create a presumption that the work was not SGA. Id. At that point, the Commissioner must rebut the presumption. Id.; see also Parks v. Comm'r, No.

9 - OPINION & ORDER

01:13-cv-00118-KI, 2014 WL 1653202, at *4 (D. Or. Apr. 23, 2014) (Commissioner can rebut the low earnings presumption of non-SGA "by pointing to substantial evidence, aside from earnings, that the work was SGA").

The regulations further circumscribe what information the Commissioner may rely on in rebutting the presumption. The Commissioner has declared that the Social Security Administration (SSA) "will generally not consider other information in addition to your earnings except in the circumstances described in paragraph (b)(3)(ii) of this section." 20 C.F.R. § 404.1574(b)(3)(i). Under that provision, the Commissioner may consider other evidence in addition to earnings if it indicates that the claimant "may be engaging in substantial gainful activity" or that the claimant is "in a position to control when earnings are paid" or the amount of wages paid. 20 C.F.R. § 404.1574(b)(3)(ii). Examples of the type of information include whether the claimant's work is comparable to that of unimpaired people in the community and the value of the work according to local pay scales. 20 C.F.R § 404.1574(b)(3)(ii)(A), (B); see also Park, 2014 WL 1653202, at *4 (noting that other relevant factors include "the nature of the work, how well the claimant does the work, if the work is done under special conditions, if the claimant is self-employed, and the amount of time the claimant spends at work.") (citing 20 C.F.R. § 404.1573).

Defendant argues that because earnings are not determinative and because Plaintiff failed to show his part-time bank teller work was not the kind of work usually done for pay or profit, or that his duties did not require use of his experience, skills or responsibility, or contribute substantially to the business, the ALJ reasonably concluded that Plaintiff's bank teller work was SGA. While Defendant correctly notes that evidence besides earnings is relevant, Defendant

ignores that Plaintiff's below-threshold earnings create a presumption that the bank teller work

was not SGA and that it is Defendant's burden to overcome this presumption.  The ALJ made no

findings regarding any of the information relevant to a finding that the bank teller job which is

presumptively not SGA, was in fact SGA.  This was error.  See Parks, 2014 WL 1653202, at *5

(ALJ erred in considering a past job PRW when the ALJ incorrectly treated the claimant's past

work as SGA "without a proper explanation"; remanding for the ALJ to determine issue in the

first instance despite facts in the record from which one could conclude that the past work was

performed as SGA).

     B.  Transferability with "Very Little" Adjustment

     Claimants like Plaintiff who are age 55 or older and are limited by a severe impairment to

sedentary work are considered disabled unless their previous work experience was skilled or

semiskilled and those skills are transferable with "very little, if any, vocational adjustment

required in terms of tools, work processes, work settings, or the industry."  20 C.F.R. Pt. 404,

Subpt. P, App. 2, § 201.00(f); see also 20 C.F.R. § 404.1568(d)(4) (SSA will find claimants of

advanced age, (meaning 55 or older), with a severe impairment which limits the claimant to

sedentary work, as unable to make an adjustment to other work unless the claimant has skills

transferrable to other skilled or semiskilled work; further providing that "[i]f you are of advanced

age and you have a severe impairment(s) that limits you to no more than *sedentary* work, we will

find that you have skills that are transferable to skilled or semiskilled sedentary work only if the

sedentary work is so similar to your previous work that you would need to make very little, if any

vocational adjustment in terms of tools, work processes, work settings, or the industry").

     SSR 82-41 expands on the regulations by adding that individuals subject to these

regulations

> cannot be expected to make a vocational adjustment to substantial changes in
> work simply because skilled or semiskilled jobs can be identified which have
> some degree of skill similarity with their PRW.  In order to establish
> transferability of skills for such individuals, the semiskilled or skilled job duties of
> their past work must be so closely related to other jobs which they can perform
> that they could be expected to perform these other identified jobs at a high degree
> of proficiency with a minimal amount of job orientation.
>
> Generally, where job skills are unique to a specific work process in a
> particular industry or work setting, e.g., carpenter in the construction industry,
> skills will not be found to be transferable without the need for more than a
> minimal vocational adjustment by way of tools, work processes, work settings, or
> industry.  On the other hand, where job skills have universal applicability across
> industry lines, e.g., clerical, professional, administrative, or managerial types of
> jobs, transferability of skills to industries differing from past work experience can
> usually be accomplished with very little, if any, vocational adjustment where jobs
> with similar skills can be identified as being within an individual's RFC.

SSR 82-41, 1982 WL 31389, at *5-6.

Plaintiff argues that the ALJ erred because his finding that Plaintiff could transfer skills to

the four semiskilled occupations identified by the VE is not based on the controlling legal

standards.  As noted above, when the ALJ asked the VE about transferable skills from his prior

jobs, the VE responded affirmatively, stating "[t]hey would most be in the financial cashiering

arena.  And they would be things like basic cashiering skills, customer service skills, information

imparting skills, mostly from the bank teller position."  Tr. 59.  The VE confirmed that the skills

would be "highly marketable."  Id.  She then identified certain occupations and recited the

number of these jobs existing in the regional and national economies.  Tr. 59-60.  When

Plaintiff's attorney asked what the VE meant by "highly marketable," she responded that she was

referring to a "very large labor market for these kind of jobs."  Tr. 63.

Based on the VE's testimony, the ALJ concluded that Plaintiff had acquired work skills

12 - OPINION & ORDER

from his PRW, meaning the bank teller position, that are transferable to other occupations with

jobs existing in significant numbers in the national economy.  Tr. 29.  He then made an express

finding that the "jobs listed by the [VE] are so similar to the claimant's previous work that the

claimant would need to make very little, if any, vocational adjustment in terms of tools, work

processes, work settings, or the industry."  Id.

Despite this finding, which repeats the legal standard *verbatim*, Plaintiff argues that it is

insufficient because the ALJ failed to ask the VE to address whether the four semiskilled jobs she

identified are so similar to Plaintiff's previous work that he would need very little, if any,

vocational adjustment in the relevant contexts.  Additionally, the ALJ failed to ask the VE to

address whether Plaintiff could perform these semiskilled jobs at a high degree of proficiency

with a minimal amount of job orientation.  Instead, the ALJ asked an irrelevant question about

marketability.  Plaintiff contends that the record does not support the ALJ's finding.  He notes

that all four occupations are in different industries.  There is no evidence in the record showing

that they use the same or similar tools or work processes as Plaintiff's bank teller job.  And, there

is no evidence that any have the same or similar work settings.  Because the finding is not

supported by substantial evidence, Plaintiff argues that the ALJ erred.

Defendant argues that Plaintiff's skills were clerical and administrative in nature because

he performed check cashing services, took deposits, and escorted customers to their safe deposit

boxes.  Tr. 197.  These skills applied to what the VE determined were three jobs "clustered

together."  Tr. 59 (listing check cashier, food checker, and auction clerk).  As such, Defendant

contends, the ALJ reasonably concluded that Plaintiff would require little if any vocational

adjustment to perform the identified semiskilled jobs.

13 - OPINION & ORDER

I disagree.  While the ALJ recites part of the proper standard in his decision by stating that the identified jobs are so similar to Plaintiff's previous work that "very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry" would be required, he failed to acknowledge that the jobs must be "so closely related to other jobs they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation."  Additionally, the basis for the ALJ's determination that the jobs are "so similar" that they would require "little, if any vocational adjustment," is unclear.  The VE testified that Plaintiff's skills would be transferable in the "financial cashiering arena," but none of the identified jobs appear to be in that industry.  And although the VE noted some specific skills that Plaintiff likely obtained from the bank teller job, there was no testimony that Plaintiff's skills are properly considered "clerical, professional, administrative, or managerial," or testimony about the amount of adjustment that Plaintiff would need.  While the ALJ expressed a finding consistent with the correct legal standard, it was incomplete and absent explanation of the supporting substantial evidence.  Without elaboration, the VE's testimony is too vague to support the ALJ's finding.  Accordingly, I agree with Plaintiff that the ALJ erred.

C.  Disability Based on Age & Sedentary Work Limitation

In support of his third argument, Plaintiff relies on a rule directed to those limited to light work.  Specifically, the rule states that

> for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a <u>significant range of semi-skilled or skilled work</u> that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by

functional restriction to light work warrant a finding of disabled.

20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c) (emphasis added).  Focusing on the phrase "a

significant range of semi-skilled or skilled work," Plaintiff argues that the four semiskilled jobs

identified by the VE are not a "significant range of work."

Plaintiff relies on a 2006 Ninth Circuit case which addressed the applicability of Rule

202.00(c).  Lounsburry v. Barnhart, 468 F.3d 1111 (9th Cir. 2006).  There, the ALJ found that

the claimant was limited to "light" work with further postural restrictions.  Id. at 1113.  After

concluding that she could not return to her PRW, the ALJ found that the claimant's PRW was

semiskilled and involved skills transferable to other work.  Id.  Although the VE initially

identified four jobs that the claimant could perform, all but one was eliminated as requiring more

than "very little [vocational] adjustment[.]"  Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, §

202.00(f)).

After first concluding that the ALJ erred by consulting a VE and not relying solely on the

grids for the disability determination[2], the court then analyzed whether the claimant was disabled

under the grids.  Id. at 1116-17.  Rule 202.07 applied to the claimant and appeared to direct a

finding of "not disabled."  Id. at 1116.  But, the court explained, the ALJ overlooked a footnote to

Rule 202.07 which indicated that Rule 202.00(c) should be consulted in applying Rule 202.07.

Id.  Rule 202.00(c), quoted above, requires a determination of whether the claimant possesses

skills which are, or are not, readily transferable to a significant range of semiskilled or skilled

work.  Id. at 1116-17.  To decide if the ALJ erred, the court was required to discern the meaning

_____

[2]  Although the claimant had non-exertional limitations, the court explained that use of
the grids was mandatory because based on the claimant's exertional limitations alone, the grids
directed a conclusion that she was disabled.  468 F.3d at 1115-16.

of the phrase "significant range of work." Id. at 1117.

The court rejected the Commissioner's position that "'work' refers to individual *jobs*, and the phrase 'significant range' only requires [the claimant] to adjust to other work existing in significant numbers in the national economy in one or more occupations." Id. Instead, the court held that the phrase "significant range of . . . work in Rule 202.00(c)" requires "a significant number of occupations." Id. (citing SSR 83-10). Because one occupation was not a "significant number of occupations," the claimant was disabled under Rule 202.07 as a result of the application of Rule 202.00(c).

Plaintiff argues that the Lounsbury analysis applies here because four semiskilled occupations do not represent a significant range of work. In support of this, he notes that under the grids, the SSA has administratively determined that there is an occupational base of 200 unskilled sedentary occupations and 1,600 sedentary and light occupations. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.00, 202.00. Despite the presence of those numbers of occupations, the grids nonetheless direct that claimants of advanced age who are high school graduates without transferable skills, and who are restricted to light or sedentary work, are disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.06, 202.06. As a result of the rules, Plaintiff suggests that the 1,600 light and sedentary unskilled jobs or the 200 sedentary unskilled jobs are by definition not a significant range of occupations to support a finding of non-disability for those claimants who are subject to Rules 201.06 or 202.06. Plaintiff argues that the addition of the four identified semiskilled jobs for Plaintiff does not broaden the range enough to be considered a "significant range of semi-skilled or skilled work" under Rule 202.00(c) as interpreted by Lounsbury.

As Defendant notes, however, Rule 202.00(c) appears in the section of the grids

governing "light" work, not "sedentary" work, the capacity of work at issue here.  Importantly, the Ninth Circuit has rejected a similar argument brought by a Plaintiff also limited to sedentary work.  In Tommasetti v. Astrue, 533 F.3d 1035 (9th Cir. 2008), the court affirmed the ALJ's non-disability determination in which the ALJ found at step five that the claimant could perform other work in the national and local economies that existed in significant numbers because his prior skills as an electronics assembler transferred to a closely related semiconductor assembler job. Id. at 1042-433.  The ALJ found that Rule 201.07 supported his determination because under that rule, a claimant of advanced age with a high school education who is limited to sedentary work is not disabled if the claimant has transferable skills.  Id. at 1043 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.07).  The court agreed that the claimant met those criteria.  Id. (further noting that under Rule 201.00(f), there must be "very little, if any, vocational adjustment").

The claimant argued that the ALJ's step-five determination was error under Lounsbury. As Tommasetti noted, Lounsbury explained that Rule 202.07, from the grid governing light exertion, expressly incorporated Rule 202.00(c), and thus, a person of advanced age with a high school degree who could do light work could be found "not disabled" only if the person's skills were readily transferable to a "significant range" of semiskilled or skilled work.  Id. (citing Lounsbury, 468 F.3d at 1116-17).  Because the Lounsbury court concluded that under Rule 202.00(c), one occupation did not constitute a "significant range," the ALJ in Lounsbury had erred.  Id. (citing Lounsbury, 468 F.3d at 1117).

The claimant in Tommasetti asked the court to extend Lounsbury's definition of "significant range" which applied to a light work analysis, to his case which involved a sedentary work analysis under Rule 201.07.  Id.  He argued that because the ALJ had identified only one

occupation to which he could adjust, the ALJ erred under <u>Lounsbury</u>.  <u>Id.</u>

      The court rejected this argument.  It explained that <u>Lounsbury</u> was distinguishable because it involved a different grid rule based on light exertion (Rule 202.07) and the claimant's case involved a grid rule based on sedentary exertion (Rule 201.07).  <u>Id.</u> at 1044.  The court observed that a "plain reading of Rule 201.07 makes clear that it is not augmented by Rule 202.00(c), the specific text which was the driving consideration in <u>Lounsbury</u>."  <u>Id.</u>

      Additionally, the court noted, the grid rules relating to sedentary work exertion do not contain the language of Rule 202.00(c).  <u>Id.</u> & n.5 (further concluding that Rule 201.00(e) is not the same provision as Rule 202.00(c) based on the text of the rules).  Because the SSA promulgated rules that treat jobs requiring light exertion and sedentary exertion differently under the grids, and the claimant had not convinced the court to "do otherwise[,]" the court rejected the claimant's "attempt to graft rules applicable to the light exertion grid onto the sedentary exertion grid."  <u>Id.</u> (explaining further that a contrary result could lead to the "confused and arbitrary application of grid rules from one exertional category to other exertional categories" which could defeat the consistency and uniformity goals served by the grids).

      <u>Tommasetti</u> is indistinguishable from the facts here.  Plaintiff is limited to sedentary work and under <u>Tommasetti</u>, Rule 202.00(c) does not apply.  I decline Plaintiff's invitation to disregard <u>Tommasetti</u> because according to Plaintiff, the court failed to address certain issues which Plaintiff contends undermine its holding.  At this point, <u>Tommasetti</u> forecloses Plaintiff's argument.

III.  Remand

      Although the ALJ erred, this case should be remanded for additional proceedings and not

for a determination of benefits.  The ALJ erred by failing to provide evidence to overcome the

presumption, created by Plaintiff's low earnings, that the bank teller position was not SGA.  As a

result, his determination that the position was PRW and provided the basis for transferable skills

was error.  Because the wages Plaintiff earned from the bank teller position create only a

presumption that it was not SGA and are not determinative, remanding to allow the ALJ to

review the record is the appropriate.  The ALJ also erred by not obtaining VE testimony

regarding Plaintiff's transition to other work and whether more than "very little" adjustment is

needed.  Additional VE testimony on this issue is required.  Thus, remand for additional

proceedings is the proper disposition.

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this _____ day of _____, 2015

Marco A. Hernandez
United States District Judge

19 - OPINION & ORDER